UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------x
CEDRIC FAVORS,

                          Plaintiff,

            - against -

TRIANGLE SERVICES, INC., TRIANGLE AVIATION SERVICES, INC, XYZ CORPORATION #1-2, ABADEEN MUSTAFACKO, AVDO DJOKOVIC, JOHN DOES #1-30, and SERVICE EMPLOYEES INTERNATIONAL UNION LOCAL 32BJ,

                          Defendants.
--------------------------------------------------------x

**ORDER GRANTING MOTION TO COMPEL ARBITRATION**

15-CV-03817 (PKC) (LB)

PAMELA K. CHEN, United States District Judge:

      Plaintiff Cedric Favors brings this employment discrimination action against Triangle Services, Inc., Triangle Aviation Services, Inc., XYZ Corporation #1-2, Abadeen Mustafacko, Avdo Djokovic, John Does #1-30 (the "Triangle Defendants"), and Service Employees International Union Local 32BJ (the "Union") (collectively "Defendants"). The Triangle Defendants have moved to compel arbitration and dismiss Plaintiff's statutory discrimination claims[1] pursuant to a collective bargaining agreement (the "CBA") entered into between the Union and the Real Estate Advisory Board on Labor Relations, Inc. (the "RAB").[2] Based on the parties'

---

[1] Despite Plaintiff having voluntarily dismissed many of his original claims, *see infra* at 2-3, in addition to Plaintiff's statutory discrimination claims, there remain State law claims for civil conspiracy and tort. (Dkt. 18, First Amended Complaint ("FAC") ¶¶ 173-183.)

[2] The parties disagree as to the governing collective bargaining agreement in this case. Based on a review of the CBAs at issue and the parties' representations that there are no substantive differences between the CBAs with respect to the relevant issues, the Court declines to decide which CBA governs. (Dkt. 31 ("Pl.'s Opp.") at ECF 8 n.2 ("The parties . . . agree that the substantive provisions relevant to the instant Motion in the Contractor CBA and the Commercial Building CBA are substantively identical, so the distinction is not particularly important for the purposes of this Motion."); Dkt. 36 ("Defs.' Reply") at ECF 6 n.1 ("Whether the 'Contractor's

submissions and for the reasons set forth below, the Court grants the Triangle Defendants' motion to compel arbitration, stays this action pending Plaintiff's participation in alternative grievance procedures, and *sua sponte* lifts the Temporary Restraining Order it imposed on August 18, 2015 (Dkt. 17.)

## BACKGROUND[3]

On June 30, 2015, Plaintiff filed a Complaint against all Defendants alleging that he was discriminated against on the basis of his race.  (Dkt. 1.)  Plaintiff subsequently moved for a temporary restraining order on August 13, 2015, asking the Court, among other things, for permission to file an amended complaint and a temporary restraining order enjoining Defendants from engaging in an arbitration on his employment discrimination claims.  (Dkt. 10.)  The Court heard oral argument on August 18, 2015 and subsequently enjoined Defendants "from engaging in, participating in, or conducting an arbitration of any matters related to Plaintiff's allegations . . . without further Order of the Court."  (Dkt. 17.)  With Defendants' consent, the Court also permitted Plaintiff to file an amended complaint.  (8/18/2015 Minute Entry.)

Plaintiff filed the First Amended Complaint on August 24, 2015.  (Dkt. 18.)  On November 2, 2015, Plaintiff voluntarily dismissed with prejudice all causes of action against the Union and Defendants John Does #11-30 "to the extent they are employees or representatives of the Union."  (Dkt. 25.)  On December 15, 2015, Plaintiff further dismissed with prejudice all causes of action

---

Agreement' or the 'Commercial Building Agreement' applies is immaterial.").)  For ease of the reference in this Order, the Court cites to the 2012 Contractors Agreement (Dkt. 32-1, the "CBA") submitted by Plaintiff.

Citations to "ECF" refer to the pagination generated by the Court's electronic docketing system and not the documents internal pagination.

[3] The Court assumes the parties' familiarity with the underlying facts supporting Plaintiff's allegations and does not recite them herein.

arising under Title VII against Defendants Abadeen Mustafacko, Avdo Djokovic, and John Does #1-30, and the Nineteenth (Negligence), Twentieth (Breach of Contract), and Twenty-Second (§ 301 of the Labor Management Relations Act) causes of action. (Dkt. 28.)[4] On January 5, 2016, the Triangle Defendants moved to compel arbitration of Plaintiff's claims. (Dkt. 29.)

**DISCUSSION**

**I.     LEGAL STANDARD UNDER THE FEDERAL ARBITRATION ACT**

The Federal Arbitration Act (the "FAA"), 9 U.S.C. §1 *et seq.*, "creates a body of federal substantive law of arbitrability applicable to arbitration agreements . . . affecting interstate commerce." *Ragone v. Atl. Video at Manhattan Ctr.*, 595 F.3d 115, 121 (2d Cir. 2010) (quotation and citation omitted).[5] The FAA was enacted to reverse "centuries of judicial hostility to arbitration agreements" and "to place arbitration agreements upon the same footing as other contracts." *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 511 (1974) (quotation and citation omitted). "[T]he FAA embod[ies] [a] national policy favoring arbitration." *Nicosia v. Amazon.com, Inc.*, 15-CV-423, 2016 WL 4473225, at *3 (2d Cir. Aug. 25, 2016) (quotation and citation omitted) (alterations in original). "[T]his policy is founded on a desire to preserve the

---

[4] Defendants assert that this stipulation dismissed the Twenty-First cause of action (Breach of Fair Representation). This is not so. According to the stipulation, Plaintiff withdrew his Nineteenth, Twentieth, and *Twenty-Second* causes of action. (Dkt. 28 ¶ 2 ("The Nineteenth, Twentieth, and Twenty Second causes of action . . . hereby are withdrawn/dismissed with prejudice[.]").) Defendants' mistake, however, is of no consequence because Plaintiff had previously withdrawn all causes of action against the Union. (Dkt. 5.) Plaintiff's twenty-first cause of action for breach of fair representation was only asserted against the Union and is thus deemed dismissed with prejudice pursuant to Plaintiff's November 2, 2015 notice of voluntary dismissal.

[5] Alternatively, Defendants move to dismiss Plaintiff's claims pursuant to Federal Rules of Civil Procedure 12(b)(1) and (6). Because the Court is staying this action pending Plaintiff's participation in the CBA's alternative grievance procedure, it need not address Plaintiff's arguments under those provisions.

3

parties' ability to agree to arbitrate, rather than litigate, disputes." *Id.* (quotation and citation omitted) (alterations in original). Consistent with this purpose, Section 4 of the FAA requires courts to compel arbitration in accordance with the terms of an arbitration agreement upon the motion of either party to the agreement, provided that there is no issue regarding its formation or validity. *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011) (citing 9 U.S.C. § 4).

"In deciding motions to compel, courts apply a standard similar to that applicable for a motion for summary judgment," *Nicosia*, 2016 WL 4473225, at * 4 (quotations and citations omitted), and courts may therefore consider materials outside the Complaint, including the parties' collective bargaining agreement. *See, e.g.*, *HBC Solutions, Inc. v. Harris Corp.*, 13-CV-6327, 2014 WL 6982921, at *1 (S.D.N.Y. Dec. 10, 2014). "[W]here the undisputed facts in the record require the matter of arbitrability to be decided against one side or the other as a matter of law, [a court] may rule on the basis of that legal issue and avoid the need for further court proceedings." *Wachovia Bank, Nat'l Ass'n v. VCG Special Opportunities Master Fund, Ltd.*, 661 F.3d 164, 172 (2d Cir. 2011) (quotation omitted). The party "seeking to avoid arbitration generally bears the burden of showing the agreement to be inapplicable or invalid." *Harrington v. Atl. Sounding Co., Inc.*, 602 F.3d 113, 124 (2d Cir. 2010) (citing *Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 91-92 (2000)).

## II.    THE COLLECTIVE BARGAINING AGREEMENT

At all relevant times during his employment, Plaintiff was bound by the CBA entered into between the Union and the RAB. Article XVI, Section 30(A) of the CBA (the "No-Discrimination Clause") contains the arbitration mechanism now being invoked by Defendants. It provides, in relevant part:

> There shall be no discrimination against any present or future employee by reason of race, creed, color, age, disability, national origin, sex, sexual orientation, union

4

>membership or any characteristic protected by law, including, but not limited to, claims made pursuant to Title VII of the Civil Rights Act . . . the New York State Human Rights Law, the New York City Human Rights Code . . . or any other similar laws, rules or regulations. *All such claims shall be subject to the grievance and arbitration procedure . . . as the sole and exclusive remedy for violations.* Arbitrators shall apply appropriate law in rendering decisions based upon claims of discrimination.

(CBA Art. XVI § 30(A) (emphasis added).)

Article XVI, Section 30(B) of the CBA (the "No-Discrimination Protocol") contains the provisions relied upon by Plaintiff in arguing against arbitration. This section is "applicable to all . . . claims, whenever they arise." (*Id.* § 30(B).) As part of the No-Discrimination Protocol, "[w]henever it is claimed that an employer has violated the [No-Discrimination Clause] (including claims based in statute), whether such claim is made by the Union or by an individual employee . . . the matter shall be submitted to mediation, absent prior resolution through informal means." (*Id.* § 30(B)(2)(a).)[6] The No-Discrimination Protocol also sets forth arbitration procedures for "circumstances in which the Union has declined to take an individual employee's employment discrimination claim . . . to arbitration and the employee is desirous of litigating the claim." (*Id.* § 30(B)(3)(a).) Article VI of the CBA provides that an arbitration award is "final and binding . . . provided, however, that nothing [in the CBA] shall be construed to forbid either of the parties from resorting to court for relief from, or to enforce rights under, any arbitration award." (*Id.* Art. VI § 4.)

---

[6] As discussed *infra*, like many courts in this Circuit, the Court treats mediation as part of, or synonymous with, the arbitration process. *See*, *e.g.*, *Ukshini v. Comity Realty Corp.*, 15-CV-6214, 2016 WL 1733468, at *3 (S.D.N.Y. Apr. 29, 2016) (submitting claims to arbitration and mediation); *Garcia v. Frank*, 09 Civ. 4599, 2010 U.S. Dist. LEXIS 142619, *10 (S.D.N.Y. July 28, 2010) ("[T]he CBA and [agreement similar to the No-Discrimination Protocol] expressly require the resolution of Plaintiff's statutory claims through mediation and/or arbitration.")

5

The seeming conflict between the CBA's No-Discrimination *Clause* and its No-Discrimination *Protocol*, as discussed *infra*, is due to recent case law development with respect to arbitration clauses in collective bargaining agreements. However, as the Court concludes below, there is no actual conflict between these two provisions, which can, and must, be read *in tandem*, to require that, pursuant to the CBA, all individual employee claims of discrimination must be arbitrated.

### III. ENFORCEABILITY OF CBA'S ARBITRATION CLAUSE

#### A. Applicability of No-Discrimination Clause Versus No-Discrimination Protocol, and Union Decision to Decline Arbitration

In *14 Penn Plaza LLC v. Pyett*, 556 U.S. 247 (2009), the United States Supreme Court made clear that a mandatory arbitration clause in a collective bargaining agreement is enforceable as to union members where it "clearly and unmistakably requires union members to arbitrate [the federal statutory claim]," and Congress has not prohibited those claims from being arbitrated. *Id.* at 257, 274. Courts in this Circuit have since applied *Penn Plaza*'s holding to claims arising under Title VII and other employment discrimination statutes including those alleged by Plaintiff here. *See, e.g.*, *Greene v. Am. Bldg. Maint.*, 12-CV-4899, 2013 WL 4647520, at *3 (E.D.N.Y. Aug. 28, 2013) ("[S]uch language clearly and unmistakably requires Plaintiff to submit to the CBA's grievance and arbitration procedures[.]"); *Veliz v. Collins Bldg. Servs., Inc.*, 10 Civ. 06615, 2011 WL 4444498, at *4 (S.D.N.Y. Sept. 26, 2011) ("[B]ecause [the plaintiff] has not utilized the grievance and arbitration procedures as required by the CBA, his [Title VII and ADEA] claims against [the defendant] are dismissed."); *Johnson v. Tishman Speyer Props., L.P.*, 09 Civ. 1959, 2009 WL 3364038, at *3 (S.D.N.Y. Oct. 16, 2009) ("Because the CBA evidences a clear intent to arbitrate, [the plaintiff's] statutory race discrimination claims are within the scope of the arbitration

6

clause."); *Borrero v. Ruppert Housing Co.*, 08 Civ. 5869, 2009 WL 1748060, at *2-3 (S.D.N.Y. June 19, 2009) (compelling plaintiff to arbitrate discrimination claims).[7]

*Penn Plaza*, however, expressly left open whether a CBA that allows a union to "block arbitration" of employees' federal statutory claims "operates as a substantive waiver of their . . . rights." 556 U.S. at 273-74. *Morris v. Temco Service Industries Inc.*, 09 Civ. 6194, 2010 WL 3291810 (S.D.N.Y. Aug. 12, 2010), which followed shortly after the Supreme Court's decision in *Penn Plaza*, is instructive on this issue. There, the Court denied a motion to compel arbitration because the clause at issue amounted to a substantive waiver of rights since the agreement did not contain an alternative procedure for the employee to pursue claims independently if the union declined to arbitrate. *Id.* at *6; *see also Kravar v. Triangle Servs., Inc.*, 06-CV-07858, 2009 WL 1392595, at *2 (S.D.N.Y. May 19, 2009) (clause unenforceable where parties did "not dispute that an individual union member does not have an unfettered right to demand arbitration of a discrimination claim; to do so, she must present the claim to the union, which 'may' demand arbitration, presumably if it finds the claim colorable.").

Because of cases such as *Morris*, employers and unions began revising their collective bargaining agreements to include mechanisms for employees to arbitrate without the union's participation. *See, e.g.*, *Germosen v. ABM Indus. Corp.*, 13-CV-1978, 2014 WL 4211347, at *3 (S.D.N.Y. Aug. 26, 2014). Here, such a revision is reflected in the No-Discrimination Protocol.

Plaintiff argues that the inclusion of the No-Discrimination *Protocol* must mean that the No-Discrimination *Clause* does not apply in cases where a union declines to pursue the employee's claims. Instead, he argues, the No-Discrimination Protocol provides the *sole* applicable

---

[7] Plaintiff does not dispute that his claims *can* be compelled to arbitration under the Supreme Court's holding in *Penn Plaza*.

7

contractual language. As explained further below, the Court disagrees, but it need not even reach this issue because Plaintiff has introduced no evidence that he made any attempt to initiate the grievance process prior to bringing this action in federal court, let alone that the Union has, in fact, declined to arbitrate his claims. *See Alfonso v. Maggies Paratransit Corp.*, 16-CV-0363, 2016 WL 4468187, at *5 (E.D.N.Y. Aug. 23, 2016) (collecting cases where courts have compelled arbitration because plaintiff failed to show that union in fact declined to arbitrate claim).

The only evidence proffered by Plaintiff is a declaration from Katchen Locke, "the duly designated representative" of the Union. (Dkt. 33 ¶ 1.) In this declaration, Locke attests that Plaintiff "has not . . . requested that Local 32BJ arbitrate a claim of discrimination . . . [on] his behalf," and that "[a]s part of its agreement with [Plaintiff] . . . [it] agreed that it will not investigate or seek to arbitrate any claim of discrimination on Plaintiff's behalf unless [Plaintiff] so requests and the Union's investigation warrants arbitration". (*Id.* ¶ 6.) These representations contradict Plaintiff's contention that the Union has outright declined to pursue his claims. The Union's statement leaves an opening—albeit, a narrow one—that the Union could still decide to pursue Plaintiff's claims in arbitration if Plaintiff "so requests."

Based on *Penn Plaza*, the Court finds it premature to determine whether the CBA's No-Discrimination Protocol mandates arbitration, given the absence of any showing that the Union has in fact declined to arbitrate Plaintiff's claim. As the Supreme Court reiterated in *Penn Plaza*, arbitration agreements should not be invalidated "on the basis of speculation." 556 U.S. at 274; *see also, e.g.*, *Green Tree*, 531 U.S. at 91 (mere "risk" that a party "will be saddled with prohibitive costs is too speculative to justify the invalidation of an arbitration agreement"); *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 637 n.19 (1985) (court had "no occasion to speculate" on whether the arbitration agreement's choice-of-forum and choice-of-law clauses

8

could operate in tandem to deprive a claimant of his right to pursue federal remedies, but "would have little hesitation in condemning the agreement" if such a situation came to pass); *JLM Indus., Inc. v. Stolt-Nielsen SA*, 387 F.3d 163, 182 (2d Cir. 2004) ("[B]ecause [the choice of law during arbitration proceedings] is speculative, our consideration of whether [plaintiff] will be able to effectively vindicate its rights under the Sherman Act is premature.").

### B. CBA Mandates Mediation and Arbitration

Even though it need not reach this issue, the Court observes that the CBA's No-Discrimination Clause and No-Discrimination Protocol are not contradictory and must be read together. While the No-Discrimination Clause governs all discrimination claims, whether brought by the Union on behalf of an individual employee or by the employee himself—and requires arbitration of all such claims—the No-Discrimination Protocol governs the subset of those claims where the Union declines to pursue the claim for the employee—but still requires mediation and, if mediation fails, arbitration when an individual employee pursues the claim on his own. (CBA Art. XVI § 30(B)(1) (indicating that the "parties" to the CBA, *i.e.,* the Union and the RAB,[8] "initiated [the No-Discrimination Protocol] as an alternative to arbitrating their disagreement" when the *Union* declined to arbitrate an individual employee's claim).)[9] In other words, the No-

---

[8] Plaintiff acknowledges that the phrase "the parties" in the CBA refers to the Union and the RAB and does not include individual employees, like Plaintiff. (Pl.'s Opp. at ECF 17.)

[9] Plaintiff makes much of the Union's agreement with Plaintiff's position that the No-Discrimination Protocol permits, but does not require, arbitration. (Pl.'s Opp. at ECF 24-25.) However, the Court is not dissuaded from its reading of the plain language of the CBA, as discussed above, by the Union's contrary position. It should also be noted that both the Union's position and the RAB's contrary position were memorialized in the introductory portion of the No-Discrimination Protocol itself (CBA Art. XVI § 30(B)(1), however, does not ("As background, following the [*Penn Plaza* decision], the RAB and the Union have had a dispute about the meaning of the [No-Discrimination Clause] and the grievance and arbitration clauses in the [CBA] entered into between [the Union and the RAB]. The Union contends that the CBAs do not make provision for arbitration of any claims that the Union does not choose to take to arbitration, including statutory discrimination claims, and therefore, individual employees are not barred from pursuing

Discrimination Protocol provides a mediation and arbitration procedure for Plaintiff and his employer as an alternative to the arbitration procedure between the Union and the RAB.[10] Absent language to the contrary, the No-Discrimination Protocol's alternative procedure for mediation and arbitration has no effect on the No-Discrimination Clause's mandate that *all* employment discrimination claims "shall be subject to the grievance and arbitration procedure . . . as the sole and exclusive remedy for violations." (*Id.* §30(A).)[11] Arbitration remains the "sole and exclusive remedy" even if Plaintiff is pursuing the alternative procedure, which includes mediation and arbitration, as laid out in the No-Discrimination Protocol.[12]

---

their discrimination claims in court where the Union has declined to pursue them in arbitration. The RAB contends that the CBAs provide for arbitration of all individual claims, even where the Union has declined to bring such claims to arbitration."). The placement of the Union's and RAB's opposing views in the preamble to the No-Discrimination Protocol demonstrates that these statements were merely intended to *explain* the genesis of, and reason for, the Protocol, *i.e.*, to cure the CBA's *Penn Plaza* defect and to resolve the parties' dispute, set forth in the preamble, over an employee's right, as well as his obligation, to mediate and arbitrate discrimination claims where the Union declines to pursue them.

[10] As previously discussed, it appears that provisions like the No-Discrimination Protocol were added to collective bargaining agreements in response to *Morris*, 2010 WL 3291810, and similar decisions.

[11] Plaintiff's argument that reading the CBA to mandate arbitration would make the No-Discrimination Protocol "useless because employees would be prohibited from utilizing them" makes little sense. (Pl.'s Opp. at ECF 16.) Plainly, if the Union declined to bring Plaintiff's claims, then Plaintiff would still be able to seek recourse by utilizing the procedures outlined in the No-Discrimination Protocol.

[12] The Court flatly rejects Plaintiff's argument that the Court is prohibited from compelling Plaintiff to mediation because Defendants allegedly did not raise this issue in their opening memorandum of law. As an initial matter, Defendants expressly quoted the holding in *Germosen v. ABM Indus. Corp.*, which found that a clause similar to the No-Discrimination Protocol "provide[d] for mandatory mediation of discrimination claims brought by individual employees." (Dkt. 29-1 ("Defs.' Mem.") at ECF 15.) Regardless, courts have recognized that clauses similar to the No-Discrimination Protocol mandate arbitration *and* mediation. *See, e.g.*, *Garcia*, 2010 U.S. Dist. LEXIS 142619, *10 ("[T]he CBA and [provision similar to the No-Discrimination Protocol] expressly require the resolution of Plaintiff's statutory claims through mediation and/or

Indeed, courts within the Second Circuit have "repeatedly concluded that under [provisions similar to the No-Discrimination Protocol], individual employees are required to arbitrate their claims." *Jenkins v. Collins Bldg. Servs.*, 10 Civ. 6305, 2013 U.S. Dist. LEXIS 186412, at *8-10 (S.D.N.Y. Oct. 16, 2013); *see also Okuma v. Crotona Park West Hous. Dev. Fund Corp.*, 14 Civ. 239, 2014 U.S. Dist. LEXIS 143444, at *15-16 (S.D.N.Y. Sept. 29, 2014) ("[E]ven assuming that the Union had refused to file a grievance on Plaintiff's behalf, the Union's refusal would not preclude arbitration."); *Germosen*, 2014 WL 4211347, at *7 (directing employee "to submit to the mediation and arbitration procedures contemplated by the CBA and the Protocol").[13] Plaintiff fails to cite a single case to the contrary.[14]

---

arbitration."). Defendant's motion to compel arbitration necessarily *includes* mediation where it is part of the arbitration procedure, as it is here.

Moreover, the Court has considered Plaintiff's other textual arguments against arbitration and rejects them too because they all rely on reading the No-Discrimination Protocol in a vacuum, which the Court declines to do.

[13] *See also Bouras v. Good Hope Mgmt. Corp.*, 11 Civ. 8708, 2012 WL 3055864, at *4 (S.D.N.Y. July 24, 2012) ("Following [*Penn Plaza*], the RAB and the Union entered into a supplemental agreement [similar to the No-Discrimination Protocol] establishing procedures that employees must follow to arbitrate claims that the Union declines to arbitrate on their behalf."); *Pontier v. U.H.O. Mgmt. Corp.*, 10 Civ. 8828, 2011 WL 1346801, at *3 (S.D.N.Y. Apr. 1, 2011) (employee required to abide by mediation and arbitration procedures); *Duraku v. Tishman Speyer Properties, Inc.*, 714 F. Supp. 2d 470, 474 (S.D.N.Y. 2010) ("arbitration is mandated under the protocol when 'the Union has declined to take an individual employee's employment discrimination claim under the no discrimination clause of the CBA"); *Garcia*, 2010 U.S. Dist. LEXIS 142619, *10 ("[T]he CBA and [provision similar to the No-Discrimination Protocol] expressly require the resolution of Plaintiff's statutory claims through mediation and/or arbitration.")

[14] Plaintiff argues that, although courts have suggested that the No-Discrimination Protocol mandates arbitration, the same courts have not actually analyzed the language of the provision. Even if true, Plaintiff's position still fails based on a plain reading of the CBA. Notably, Plaintiff has inappropriately submitted a *declaration* from his attorney Matthew J. Walters, in which he attempts to distinguish the cases cited by Defendants in their opening brief. (Dkt. 34 ("Walters Aff.") ¶¶ 18-27.) These statements present legal argument "and as such . . . shall be disregarded." *Novak v. Tucows, Inc.*, 06-CV-1909, 2007 WL 922306, at *3 (E.D.N.Y. Mar. 26, 2007), *aff'd,* 330

**IV.     STAYING THE INSTANT PROCEEDINGS**

Having concluded that Plaintiff's claims are subject to mandatory mediation and arbitration, the Court must decide whether to dismiss, as Defendants request, or stay this action pending Plaintiff's submission to the CBA's grievance procedures.  "The Second Circuit has urged courts to be mindful of th[e] liberal federal policy favoring arbitration agreements when deciding whether to dismiss an action or instead grant a stay and consider that [u]nnecessary delay of the arbitral process through appellate review [following dismissal] is disfavored."  *Pontier*, 2011 WL 1346801, at *4 n.3.  Moreover, the Second Circuit recently held that the FAA "requires a stay of proceedings when all claims are referred to arbitration and a stay [is] requested."  *Katz v. Cellco P'ship*, 794 F.3d 341, 343 (2d Cir. 2015).  Although Defendants request complete dismissal instead of a stay, the Court finds that the same policy reasons relied on in *Katz* support a stay of the case here.  *Id.* at 346 (noting that a stay is consistent with the FAA's underlying policy "to move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible . . . [and to] enable[] parties to proceed to arbitration directly, unencumbered by the uncertainty and expense of additional litigation").  The Court additionally finds a stay appropriate in light of the possibility that Plaintiff may require further redress from this Court on his non-statutory discrimination claims.[15]    Accordingly, the Court will stay this matter pending Plaintiff's submission to the CBA's mediation and arbitration procedures.

---

F. App'x 204 (2d Cir. 2009).  Notwithstanding the inappropriateness of Mr. Walters's declaration, the Court has reviewed on its own the case law cited by Defendants in their opening brief.

[15] As previously noted, Plaintiff's claims for civil conspiracy and tort are still pending and are not the subject of Defendant's motion to compel.  (FAC ¶¶ 173-183.)  However, Plaintiff's causes of action for declaratory and injunctive relief are mooted by this decision.

## CONCLUSION

For the reasons set forth above, Defendants' motion to compel arbitration is granted, this case is stayed, and the Court's August 18, 2015 Temporary Restraining Order is lifted. If Plaintiff wishes to proceed with his claims, he is directed to submit to the grievance procedures contemplated by Article XVI, Section 30(A) of CBA. If the Union declines to take his claims to arbitration notwithstanding Plaintiff's request, then he is directed to submit to the mediation and arbitration procedures outlined in Article XVI, Section 30(B) of the CBA. The parties are directed to inform the Court of any resolution of the arbitration proceedings, or any other event, that would affect the stay of this matter.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: September 13, 2016
　　　　Brooklyn, New York